

**SIGNED this 27th day of December, 2011**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION**

| | |
|---|---|
| In re: | |
| LEE TORY STEVENS, | No. 05-16282<br>Chapter 7 |
| Debtor; | |
| LEE TORY STEVENS, | |
| Plaintiff, | |
| v. | Adversary Proceeding<br>No. 11-1049 |
| CITIZENS TRI-COUNTY BANK | |
| Defendant. | |

**MEMORANDUM**

Defendant Citizens Tri-County Bank ("Bank" or "Defendant") moves to dismiss this adversary proceeding. [Doc. No. 9].[1] Plaintiff debtor Lee Tory Stevens ("Plaintiff" or "Debtor") opposes the motion to dismiss. [Doc. No. 13]. The Plaintiff also has filed a motion to amend his

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 11-1049, unless otherwise noted.

complaint and has filed a copy of the proposed amended complaint. [Doc. Nos. 11,11-1]. The proposed amended complaint includes a claim for violation of the discharge injunction, 11 U.S.C. § 524.  The motion to dismiss came on for hearing on December 5, 2011. Counsel for the Defendant and counsel for the Debtor both appeared.

At the same time that the Debtor filed this adversary proceeding, he filed a motion for contempt in the main bankruptcy case that the court denied without prejudice. [Bankr. Case No. 05-16282, Doc. No. 33]. The Defendant has not filed an answer to the complaint in this proceeding, but has filed the pending motion to dismiss.

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court delivered its opinion orally on December 19, 2011. At the parties' request, the court agreed to prepare and file the memorandum. This memorandum contains minor edits for style, grammar, and citation, and therefore differs from the version read into the record. To the extent that there is any difference, this version shall amend the ruling announced on the record.

**I.      Background**

The Debtor has filed three Chapter 13s in this court. Only the second case is relevant. The Debtor's second Chapter 13 bankruptcy petition was filed on March 11, 2002. [Bankr. Case No. 02-11588, Doc. No. 1 ("Second Case")]. The court granted the trustee's motion to dismiss on September 3, 2003, and the case was closed on March 1, 2004. [Bankr. Case No. 02-11588, Doc. Nos. 32, 37].

Following the three Chapter 13 cases, on September 28, 2005 the Debtor filed a Chapter 7 voluntary bankruptcy petition. [Bankr. Case No. 05-16282, Doc. No. 1 ("Chapter 7 Case")]. On January 25, 2006 the court issued an order discharging the Debtor. [Bankr. Case No. 05-16282, Doc. No. 16].  The clerk of the court closed the Debtor's Chapter 7 bankruptcy

case on March 7, 2006.

On April 28, 2011 the Debtor filed this adversary complaint. [Doc. No. 1]. On the same date, the Debtor filed a motion to reopen the Chapter 7 bankruptcy case. [Bankr. Case No. 05-16282, Doc. No. 19]. On July 14, 2011 the Debtor filed his motion for contempt in the main bankruptcy case that recounted similar facts as those alleged in the pending adversary. [Bankr. Case No. 05-16282, Doc. No. 33]. The court denied the motion for contempt and denied the Debtor's motion to reopen the Chapter 7 bankruptcy case. *Id.* at Doc. Nos. 37, 38. At that time, the parties were unable to show the court that the Bank was trying to do more than foreclose on its collateral – securing an obligation that had not been satisfied. The court also found that nothing in the state court action was an attempt to collect on a debt that had been paid off in a prior bankruptcy.

The Debtor's adversary complaint alleges the facts that follow. The court has also held a hearing on the motion to reopen, as well as a status conference and a hearing on the motion to dismiss that have both aided the court in understanding the facts alleged pertaining to the three tracts of land at issue. *See* [Bankr. Case No. 05-16282, Doc. No. 35, Hearing Held on July 18, 2011]; [Doc. No. 16, Hearings Held on November 7, 2011 and December 5, 2011].

On March 26, 2006 the Debtor's father, Taylor Stevens, conveyed to the Debtor a tract of land by Warranty Deed. *See* [Doc. No. 11-1, Proposed Amended Complaint ("Amended Complaint"), ¶ 7; Doc. No. 2-1, Exhibit A, Warranty Deed]. The tract was described as being in the center of Old Jack Trussell and Monteagle Road and was recorded in Book 215 at page 237 in the Office of the Marion County Register of Deeds. *Id.* The tract ("Tract A") consisted of 2 acres. *Id.*

According to the Amended Complaint, "[a]t the time of the conveyance from Taylor Stevens to Plaintiff, both Taylor Stevens and Plaintiff intended the conveyance to be the parcel containing .93 acres described as Tract 1 on a survey titled 'Survey for Deed of Correction

Citizens Tri County Bank and Troy Stevens' dated 10/21/2008 . . . ." Amended Complaint, ¶ 8; *see also*, [Doc. No. 2-1, Exhibit B]. The court will refer to this .93 acre parcel of land as "Tract B". The Amended Complaint further describes how the Debtor executed promissory notes to the Bank secured by land described as the land described in the Warranty Deed at Exhibit A or Tract A:

> On or about July 26, 1996, October 20, 1997 and September 21, 1999 Plaintiff executed certain Deeds of Trust securing promissory notes to Citizens by instruments recorded in Book 219, Page 260, Volume 240, Page 550 and Volume 273, Page 1449 respectively in the Register's Office of Marion County, Tennessee. The description on the deeds of trust was the description in the Warranty Deed attached as Exhibit "A". Plaintiff and Defendant, at all times, mistakenly believed that the parcel he purchased and secured with deeds of trust to Citizens was the .93 acres described as Tract 1 of Exhibit "B".

Amended Complaint, ¶ 9.

The Debtor erected some improvements on Tract B, including adding a mobile home and constructing a garage. Amended Complaint, ¶ 10. The Debtor had previously borrowed money from the Bank. The Amended Complaint further alleges that "[o]n or about December 18, 2000, Plaintiff executed another deed of trust recorded in the land records in the Office of the Marion County Register of Deeds in Book 286, Page 1157 conveying certain real property to Citizens in trust." *Id.* at ¶ 11. The legal description of this property, which the court will refer to as "Tract C," provides that the property sits next to Jernigan Road and consists of 3.18 acres. *Id. See also,* Doc. Nos. 2-1, Exhibits C and D.

The Amended Complaint asserts that in the Debtor's Second Case, the Debtor was able to sell Tract C, the 3.18 acre tract, to Mr. John Peck and pay the Bank $35,000 in full satisfaction of its lien on Tract C. Amended Complaint, ¶¶ 12, 13; [Doc. No. 2-1, Exhibit E]. Exhibit E attached to the original complaint indicates that the Debtor conveyed Tract C to the Pecks via a Warranty Deed that was signed on December 5, 2002. *Id.* The Bank received a cashier's check that satisfied its lien in full. *See* [Doc. No. 2-1, Exhibit F]. The Bank issued a

release pertaining to Tract C on February 11, 2003. [Doc. 2-1, Exhibit G].

In his Chapter 7 bankruptcy case filed in 2005, the Debtor received a discharge on January 25, 2006. [Bankr. Case No. 05-16282, Doc. No. 16]. The Amended Complaint describes the facts at the heart of Plaintiff's alleged claims as follows:

> On June 6, 2006 Citizens exercised the power of sale clause in their Deeds of Trust recorded with the Office of the Marion County Register of Deeds . . . Citizens believed that these Deeds of Trust secured Tract 1 of Exhibit "B" along with the improvements thereon. Stated improvement included in the Substitute Trustee's Deed was the conveyance of a 1997 Fleetwood Mobile Home. Said mobile home was located on the .93 acre parcel described as Tract 1 on Exhibit "B" [Tract B].
>
> On June 6, 2006, prior to the foreclosure of the liens on Tract 1 on Exhibit "B", Plaintiff informed Citizens that the description in the Notice of Foreclosure in the newspaper was incorrect. Citizens foreclosed upon the incorrect parcel of land, which land was owned by Taylor Stevens. Taylor Stevens filed suit against Citizens praying for reformation of the deed from him to Plaintiff recorded with the Marion County Register's Office in Book 215, Page 237 and other related documents.
>
> In response to the action filed by Taylor Stevens for reformation, Citizens, by way of their Answer and Amended Third-Party complaint, attempted to obtain an additional 1.07 acres of land . . . a portion of which would include land from Tract 1 of Exhibit C [Tract C] for which Citizens already had received payment through the Plaintiff's Chapter 13 plan on December 5, 2002. The Plaintiff's Chapter 13 plan was converted to a Chapter 7 whereby Plaintiff received a discharge on January 25, 2006.

Amended Complaint, ¶¶ 17-19.

In the original complaint the Plaintiff alleged a claim of violation of the automatic stay, 11 U.S.C. § 362. [Doc. No. 1, ¶ 22]. Plaintiff seeks to amend his complaint to include a claim for violation of the discharge injunction under 11 U.S.C. § 524. In describing the Defendant's father's state court reformation claims, the Amended Complaint states:

> Debtor acquired [Tract C] containing 3.19 acres after it was sold to two other entities. Citizens, through their state court action filed with the Chancery Court of Marion County, attempted to obtain another acre of land from the parcel for which they were already paid through Debtor's Bankruptcy Plan. Despite having notice of the Debtor's bankruptcy filing and Debtor's subsequent discharge, Citizens repeatedly attempted to obtain an ownership interest in property that was included in the Debtor's Chapter 7 Bankruptcy plan for which Citizens has

> already received payment through the Debtor's Bankruptcy. . . . In a letter dated
> April 13, 2010, Debtor's counsel reiterated to Citizens that the Debtor had
> received a discharge and referenced the violation on Citizens part. . . . Debtor's
> counsel made an Offer of Judgment which was ignored by Citizens for over a
> year and one half while Citizens pursued [its] state court action against Debtor. .
> . . Only after a protracted litigation process and great expense to Debtor did
> Citizens finally agree to the proposed settlement and the proffered Offer of
> Judgment which was initially offered by Debtor a year and one half ago, that
> being reformation of the deeds.

Amended Complaint, ¶¶ 26-35. The Debtor seeks attorneys' fees and costs, actual damages and punitive damages for violation of the discharge injunction.

The Bank agrees with many of the facts asserted by the Debtor. However, its version of the events leading to the reformation action in state court differ from the Plaintiff's version as explained to the court in the hearing held on November 7, 2011. It contends that after the Debtor sold Tract C, the 3.18 acre lot, he did pay off one of his loans to the Bank. However, the Debtor's first loan to the Bank remained secured by Tract A. The Debtor received a discharge in his Chapter 7 case, and he did not reaffirm the debt on Tract A to the Bank. In 2006, the Bank began foreclosure proceedings on Tract A. At that time the Debtor and his father raised the issue of mistake. The Debtor's father claimed that the legal description of Tract A, his residence, had been inserted in the deed to his son rather than the description of Tract B, which is the tract on which his son lived. The Debtor's father brought the state court reformation suit to reform his deed to insert Tract B for Tract A.

The lawsuit also sought to stop the Bank from foreclosing and to substitute Tract B for Tract A in the Bank's deed of trust. This relief effectively cut the acreage conveyed to the Bank as security by half. The Bank contended that there had been no mistake in its understanding with the debtor. It opposed the father's complaint and also pled that, if it lost Tract A, then the Debtor should have to pledge a second acre to leave the Bank in the same position after the reformation. The Bank suggested that the additional acre come from the Debtor and that the acre the Bank wanted was an acre that was a part of what had been Tract C. The request for

the additional acre had nothing to do with the second loan, but was rather a request for the court to consider some form of equitable relief to the Bank which claimed that it had relied on two acres of real estate when it made the loan. At the hearing on the motion to dismiss, counsel for the Bank and the Debtor disagreed about whether the bank had relied on two acres or had always intended to obtain the parcel where the Debtor, not the Debtor's father, resided as its collateral.

### II.  Issues

The court will first briefly address the Plaintiff's motion to amend his complaint.

The court will next address the Plaintiff's claim of violation of the automatic stay under 11 U.S.C. § 362.

The last issue the court will address is whether the Debtor has a private right of action under 11 U.S.C. § 524 for violation of the discharge injunction. The court will also address the question of whether, even if the Debtor has such a private right of action.

### III.  Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). The court will thus review the motion to dismiss by assuming the facts as alleged by the Debtor.

**IV.    Analysis**

**A.    Motion to Amend the Complaint**

Federal Rule of Bankruptcy Procedure 7015 makes Fed. R. Civ. P. 15 applicable in adversary proceedings. Fed. R. Bankr. P. 7015. Rule 15 provides:

> (1) A party may amend its pleading once as a matter of course within:
> (A) 21 days after serving it, or
> (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
> (2) In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. . . .

Fed. R. Civ. P. 15(a). Courts have determined that the filing of a motion to dismiss is not a responsive pleading. *See e.g., Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000). However, changes to Rule 15 enacted in 2009 have modified the rules on amending a pleading once as a matter of course. The current rule requires that an amendment as a matter of course is only allowed within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. Proc. 15(a)(1)(B).

In this case the Bank served its motion to dismiss on November 2, 2011. [Doc. No. 9]. The Plaintiff moved to amend his complaint on November 28, 2011. [Doc. No. 11]. Thus, the 21-day period for amending the complaint as a matter of course had expired when the Plaintiff filed his motion to amend. Therefore, Fed. R. Civ. P. 15(a)(2) applies.

In reviewing whether a court should grant a motion to dismiss, "[l]eave shall be freely

given when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, "if a complaint cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile."  *Bajwa v. John Adams Mortg. Co.*, No. 11-cv-12183-DT, 2011 WL 6009266, at *6 (E.D. Mich. Nov. 30, 2011) (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)).  Thus, the court will consider whether the Plaintiff's Amended Complaint, even construed with the facts as alleged by the Debtor, can survive the motion to dismiss.  The court also notes that reviewing the Amended Complaint should not prejudice the Bank in this case, as its motion to dismiss already assumes that the claim that the Plaintiff intended to allege was not one for violation of the automatic stay, but instead, was a claim for violation of the discharge injunction.  The Defendant argued that if Plaintiff was bringing a claim under the discharge injunction, no private right of action exists under 11 U.S.C. § 524.

As explained *infra*, the court concludes that even the Amended Complaint cannot withstand the Bank's motion to dismiss.  Therefore, the court will **DENY** the Debtor's motion to amend his complaint as futile.

      **B.**     **Violation of the Automatic Stay**

Initially, the court notes that Plaintiff's claim for violation of the automatic stay, 11 U.S.C. § 362, must be dismissed. As one bankruptcy court has articulated, "dismissal of the bankruptcy petition has the simultaneous effect of undoing the bankruptcy estate and lifting the automatic stay, just as the filing of the petition creates the bankruptcy estate and imposes the automatic stay." *In re Garnett*, 303 B.R. 274, 278 (E.D.N.Y. 2003). Thus, the Bank did not violate the automatic stay when it sought to foreclose on Tract A and contest the state court lawsuit following the Debtor's discharge in his Chapter 7 bankruptcy.  *See id.*

As the Sixth Circuit has explained it, "Sections 524 and 362 apply to different time periods, of course.  Section 362 applies during the automatic stay, whereas § 524(a)(2) applies post-discharge."  *Pertuso*, 233 F.3d at 425. *See also, Trainor v. Kowalske (In re Kowalske)*, No.

08-14774, 2009 WL 1708031, at *1 (E.D. Mich. June 16, 2009) (citing 11 U.S.C. § 362(c)(2)(C)); *In re Ulrich*, 456 B.R. 345, 347 (Bankr. N.D. Ohio 2011). Since the Plaintiff had received a discharge from this court and his bankruptcy case had been closed before the Bank's foreclosure action, his claim for violation of the automatic stay must be **DISMISSED**.

    **C.    Violation of the Discharge Injunction - 11 U.S.C. § 524**

    **1.    Does 11 U.S.C. § 524(a) Create a Private Right of Action?**

11 U.S.C. § 524(a)(2) states that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . . ." 11 U.S.C. § 524(a)(2).

The parties disagree about whether a private right of action for a claim for violation of the discharge injunction under 11 U.S.C. § 524 exists or whether such a claim must be brought pursuant to a motion for contempt in the main bankruptcy case. In *Pertuso* the Sixth Circuit directly addressed whether a private right of action exists under 11 U.S.C. § 524. In that case the debtors brought an action against a creditor that solicited a reaffirmation agreement from them pertaining to their vehicle. 233 F.3d at 419. The debtors claimed that the creditor violated both the automatic stay provision and the discharge injunction under the Bankruptcy Code. The gravamen of the debtors' claim was that the reaffirmation agreement solicitation by the creditor was an improper debt collection practice, and they brought a purported class action against the creditor in district court.

The Sixth Circuit noted that the question of "[w]hether 11 U.S.C. § 524 impliedly creates a private right of action for an asserted violation of the section is a question of first impression in this circuit." *Pertuso*, 233 F.3d at 421. The debtors argued that an implied right of action existed and in the alternative, Section 524 was enforceable through the use of 11 U.S.C. § 105. *Id.* 11 U.S.C. § 105 provides that bankruptcy courts may issue orders that are necessary or

appropriate to carry out provisions of the Bankruptcy Code.  11 U.S.C. § 105.

The Sixth Circuit determined that "the obvious purpose" of Section 524(a)(2) "is to enjoin the proscribed conduct – and the traditional remedy for violation of an injunction lies in contempt proceedings, not in a lawsuit such as this one." *Pertuso*, 233 F.3d at 421.  The court noted that Congress amended 11 U.S.C. § 362 to provide for a private right of action "because reliance on the contempt power to remedy violations of § 362 had been widely criticized." *Id.* at 422.  The court then explained that Congress also amended Section 524 at the same time and did not add a private right of action. *Id.* The Sixth Circuit found that the "contrast . . . is instructive." *Id.* The Court also concluded that "[l]ower courts addressing the question of whether there is an implied right of action under § 524 have reached conflicting results. The more persuasively reasoned opinions, in our judgment, are those holding that no such right of action exists." *Id.* It further explained:

> Congress knew that courts were enforcing § 524 through contempt proceedings, and Congress knew how to create a private right of action when it wished to do so, but in this instance it elected to do nothing. As with § 363, we do not believe that the failure to provide for a private right of action in connection with § 524 was accidental. . . .
>
> As to the argument that violations of § 524 may be remedied pursuant to § 105 . . . , we rejected a similar argument in *Kelvin*. In holding that § 105 could not be invoked to remedy breaches of § 363, we expressed ourselves as follows:
>
>> "[W]e do not read § 105 as conferring on courts such broad remedial powers. The 'provisions of this title' simply denote a set of remedies fixed by Congress. A court cannot legislate to add them."
>
> This remains our view.

*Id.* at 422-23 (quoting *Kelvin v. Avon Printing Co., Inc. (Matter of Kelvin Publishing, Inc.)*, No. 94-1999, 1995 WL 734481, at *4 (6th Cir. Dec. 11, 1995)).

Following *Pertuso*, courts have continued to diverge on whether debtors can bring a private right of action under 11 U.S.C. § 524 through an adversary proceeding, even in this

Circuit. For example, in *Motichko v. Premium Asset Recovery Corp.* the bankruptcy court acknowledged *Pertuso*, but noted that "[a]lthough no private right of action exists within the statute, the Sixth Circuit Court of Appeals and a majority of other circuits have held violations of § 524 are punishable by sanctions for contempt of court." 395 B.R. 25, 29 (Bankr. N.D. Ohio 2008).The court relied on other bankruptcy decisions in this Circuit and noted that "'the modern trend in civil contempt proceedings is for courts to award actual damages for violations of § 524's discharge injunction, and, where necessary to effectuate the purposes of the discharge injunction, a debtor may be entitled to reasonable attorney fees." *Id.* at 30 (quoting *Miles v. Clark (In re Miles)*, 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006) and relying on *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326 (Bankr. N.D. Ohio 2005)). The court then reviewed whether the debtors had alleged "each material element of violation of the discharge injunction, *i.e.* contempt of court." *Motichko*, 395 B.R. at 31. The court reviewed whether the complaint alleged that "(i) Debtors received a discharge; (ii) [the creditor] received notice of the discharge; and (iii) [the creditor] intended the acts that violated the discharge injunction." *Id.* After the court found that the debtors had sufficiently alleged a claim for contempt of court, it addressed the appropriate procedure for handling the contempt claim. It explained that:

> To dismiss on procedural grounds alone would be to elevate form over substance. . . . Given that this Court has the discretion to require the more structured discovery process of an adversary proceeding in a contested matter, the Court sees no reason to require Debtors to dismiss this adversary proceeding and refile it as a contested motion. Such unnecessary "hoop jumping" would merely serve to increase the costs of litigation, without providing any real benefit to either party.

*Id.* at 33. The court then denied the creditor's motion to dismiss. *Id.*

In contrast, in *Frambes v. Nuvell Nat'l Auto Fin., LLC (In re Frambes)*, the bankruptcy court specifically disagreed with the holding of *Motichko*. 454 B.R. 437 (Bankr. E.D. Ky. 2011); *see also, Pereira v. First North American Nat'l Bank*, 223 B.R. 28, 30 (N.D. Ga. 1998) (finding no private right of action under Section 524). The bankruptcy court noted that "[w]hile there is

no private right of action within § 524, the Sixth Circuit has held violations of § 524 are punishable by sanctions for contempt of court. . . . These sanctions may include actual damages as well as attorneys' fees." *Id.* at 440. The court relied on both *Pertuso* and on *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2011) in determining that a contempt action to remedy a violation of the discharge action must be brought as a motion in the main bankruptcy case. In distinguishing *In re Miles* and *Motichko*, the *Frambes* court noted:

> While this court respects the findings of its sister courts in this circuit, it cannot reconcile the reliance of these courts on § 105 to allow a private right of action in an adversary proceeding where the Sixth Circuit explicitly held in *Pertuso* that § 105 does not confer that power on the bankruptcy court. *Pertuso* was clear that the traditional remedy is a contempt proceeding brought by motion rather than by lawsuit. Section 105 cannot be used to circumvent that ruling.

454 B.R. at 441. The court reviewed the *Barrientos* decision and its analysis of the language of Bankruptcy Rules 9020, 9014 and 7001 relating to contempt proceedings and adversary proceedings. The court concluded that "[t]he Ninth Circuit's well-reasoned analysis supports this Court's conclusion that the only remedy for a debtor aggrieved by a violation of the discharge injunction is to seek relief by virtue of a motion in the main bankruptcy proceeding." *Id.* at 443. The court then dismissed the debtor's claim of a violation of the discharge injunction without prejudice and with leave for the debtor to file a motion for contempt in the main bankruptcy case. *Id.*

In this case the court realizes that the Debtor's main bankruptcy case has been closed, his motion for contempt based on facts relating to the facts alleged in this adversary has been denied, and his motion to reopen the case has been denied. With these facts in mind and in reviewing the two approaches outlined *supra*, the court concludes that the cases following *Pertuso* represent the more well-reasoned approach. The court finds that *Pertuso* explicitly rejected using 11 U.S.C. § 105 as a means of creating a private right of action for violations of the discharge injunction. 233 F.3d at 421-23. The court will follow in the footsteps of the court in

*Frambes* and *Pertuso*. The court concludes that remedies for a violation of the discharge injunction must be sought through a motion for contempt in the main bankruptcy case and not through a separate adversary proceeding. *See* 454 B.R. at 441. For this reason, the Bank's motion to dismiss will be GRANTED.

In addition, the court notes that at the status conference the Debtor raised the issue of whether the Bank's request for a replacement acre, even if such a request was only an alternative form of relief, was a violation of the discharge injunction. If the state court had granted reformation, it would have determined that the equities favored the father and there were multiple resolutions regarding the bank's interests depending on what the state court found regarding the Bank's intentions, understanding, conduct and reliance; however, this court does not have the benefit of those findings. The parties never reached this point because the state court case was settled. The issue of whether the request for the replacement acre was an attempt to obtain money damages on a claim, or was a request for equitable relief based on a cause of action that is not a claim was not raised or briefed in the debtor's prior motion for contempt. *See Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001).

**V.    Conclusion**

As explained *supra*, the court concludes that the Plaintiff's Amended Complaint fails to state claims for relief.  The motion to amend the complaint will be DENIED as futile. In addition, Plaintiff's claim for sanctions or other fees is without merit.  For these reasons, the court will GRANT the Defendant's motion to dismiss.  The Plaintiff's request for fees will be DENIED.  The court will DISMISS this adversary proceeding.

A separate order will enter.

# # #